**UNITED STATES of America,
Plaintiff,**

v.

**Jason WEED, Defendant.**

**Nos. 01–149M, 02–CR–10–K.**

United States District Court,
N.D. Oklahoma.

Dec. 27, 2001.

On Reconsideration Jan. 8, 2002.

Motion Granted Feb. 6, 2002.

Paul D. Brunton, Julia O'Connell, Federal Public Defender's Office, Tulsa, OK, for defendant.

Douglas A. Horn, United States Attorney, Tulsa, OK, for plaintiff.

JOYNER, United States Magistrate Judge.

### ORDER

Now before the Court is the United States of America's motion, pursuant to 18 U.S.C. § 4241, for a hearing to determine

Defendant's mental competency to stand trial. [Doc. No. 4]. The Court set the motion for hearing and heard argument on December 21, 2001. Defendant was present at the hearing and represented by Julia O'Connell and Paul Brunton with the Federal Public Defender's office in this district. The United States was represented by Assistant United States Attorney, Douglas Horn. The hearing was open to the public and members of the victim's family and members of the press were present.

## I. DISCUSSION

■■■ The Constitution prohibits a court from trying a defendant who is presently mentally incompetent. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The Constitution also requires an adequate hearing to determine the defendant's competence to stand trial. *Id.; James v. Singletary,* 957 F.2d 1562, 1569–72 (11th Cir.1992). When deciding whether a criminal defendant is competent to stand trial, a court must determine if the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Congress enacted §§ 4241–4247 of Title 18 to provide a procedural mechanism for making determinations of mental competency to stand trial.

■■■ "When the United States Attorney has information causing him to have reasonable doubt as to the competency of a criminal defendant he is duty-bound to report it to the court and to request a mental examination." *United States v. Varner,* 467 F.2d 659, 661 (5th Cir.1972). For this reason, 18 U.S.C. § 4241(a) per-

mits the attorney for the government to file "a motion for a hearing to determine the mental competency of the defendant." In this case, Mr. Horn, the Assistant United States Attorney prosecuting Mr. Weed, has concerns about Mr. Weed's present competency. Consequently, Mr. Horn fulfilled his duty to the Court and filed a motion for a hearing to determine Mr. Weed's present mental competency.

The Court is required to grant the government's motion if:

> there is reasonable cause to believe that [Mr. Weed] may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). The Court set the hearing on December 21, 2001 for the sole purpose of determining (1) whether to grant the government's request for a hearing on Mr. Weed's present mental competence (i.e., to make the "reasonable cause" determination required by § 4241(a)); and (2) whether, if a competency hearing were to be held, a psychiatric or psychological examination of Mr. Weed needed to be performed prior to the competency hearing pursuant to § 4241(b). *See United States v. McEachern,* 465 F.2d 833, 837 (5th Cir.1972) (holding that, under § 4241's predecessor, a court may set a hearing to determine whether "reasonable cause" exists to believe that the defendant "may" be suffering from a mental disease or defect).[1]

As an initial matter, the government argued at the December 21st hearing that the Federal Rules of Evidence were not applicable to a determination of its motion. As support, the government referred to

---

1. The Fifth Circuit's analysis in *McEachern* was cited with approval by the Tenth Circuit

in *United States v. Hill,* 526 F.2d 1019, 1023 (10th Cir.1975).

Fed.R.Evid. 1101(d)(3), which makes the rules of evidence inapplicable to "preliminary examinations in criminal cases . . . ." The Court does not agree. A review of the entire Rule and the Advisory Committee Notes to that rule make it clear that Rule 1101(d)(3)'s reference to "preliminary examinations" is a reference to the "preliminary examination" contemplated by Fed.R.Crim.P. 5.1. *See United States v. Veon,* 538 F.Supp. 237, 249 n.18 (E.D.Ca. 1982); and 31 Wright & Gold, *Federal Practice and Procedure: Evidence* § 8077, p. 626–27 (2000). The Federal Rules of Evidence will, therefore, be in force in connection with the government's request for a hearing to determine Mr. Weed's mental competency to stand trial.

█ In support of its motion, the government offered at the December 21st hearing a videotape of the Tulsa Police Department's initial interview of Mr. Weed on December 12, 2001 shortly after his arrest for the offense charged in this case. Defendant objected to the admissibility of the tape on two grounds: lack of foundation and relevance. Defendant argued that the tape was irrelevant because the issue now before the Court is whether Defendant is presently suffering from a mental disease or defect, not whether he was suffering from a mental disease or defect on December 12th when he was arrested. The Court finds, however, that a videotape depicting Defendant's mental incompetence seven days ago has at least some "tendency" to make the fact that he is presently incompetent more probable than if that videotape did not exist. Under the standards of Fed.R.Evid. 404, the videotape is, therefore, relevant. The Court also finds that testimony presented by the government from Jeffrey Felton, a Tulsa Police Department officer, sufficient-

ly authenticated and established a chain of custody for the videotape under Fed. R.Evid. 901(b)(1). The Court finds, therefore, that the videotape is admissible in connection with the government's motion requesting that a hearing be set to determine Mr. Weed's mental competency to stand trial.

At the December 21st hearing, the government requested the videotape of Mr. Weed's initial interview be sealed and not displayed in open court. Defense counsel objected to the government's request, arguing that pursuant to the Sixth Amendment to the United States Constitution Defendant was entitled to a public hearing. The Court also raised its concerns with the parties that sealing the videotape might violate the public's (i.e., the family of the victim's and the press') right to access under the First Amendment. *See Press– Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*); *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*); *United States v. McVeigh,* 119 F.3d 806 (10th Cir.1997); and *United States v. McVeigh,* 918 F.Supp. 1452 (W.D.Okla.1996). Because the resolution of the government's motion to seal the videotape implicates important constitutional considerations, the Court took the matter under advisement and ordered additional briefing on the issue.[2]

Prior to the December 21st hearing, the Court had reviewed the videotape of Mr. Weed's initial interview, the tape having been delivered to the Court by the government as an exhibit to its motion. Unknown to the Court, however, the government did not serve defendant's counsel with a copy of the tape as an exhibit to its motion. In

---

**2.** The government's motion to seal and brief in support are due on or before January 4, 2002. Defendant's response is due on or be-

fore January 14, 2002. The government's reply is due on or before January 19, 2002.

a telephone conference with the parties prior to the December 21st hearing, the Court ordered that the government provide defense counsel with a copy of the videotape prior to the December 21st hearing. Thus, prior to the December 21st hearing, the Court, the government, and defense counsel all had an opportunity to, and did, view the videotape. Immediately prior to the December 21st hearing, the Court also offered defense counsel the opportunity to view the videotape in chambers with their client. Defense counsel did not take the opportunity, preferring instead to stand on their claim that the videotape should be shown in open court. Because all parties had seen the tape prior to the hearing, the Court admitted the videotape at the hearing, without showing it in open court. The videotape is, therefore, in the court file and will be sealed or released for public viewing upon a determination of the government's motion to seal the videotape.

Other than the videotape, the government offered no additional evidence in support of its motion. In response to the videotape, Defendant presented testimony from Curtis Todd Grundy, a psychologist employed by defense counsel to examine Defendant. Dr. Grundy testified that in his opinion Mr. Weed was presently competent to stand trial. Presumably defense counsel presented Mr. Grundy in an attempt o demonstrate that there is no "reasonable cause" to believe that Mr. Weed "may" presently be suffering from a mental disease or defect making him incompetent to stand trial.

At this stage of the proceedings, the government has filed a motion seeking only to have a hearing to determine Mr. Weed's mental competency to stand trial. As discussed above, to obtain such a hearing, the government need not establish by a preponderance of the evidence that Mr. Weed is incompetent to stand trial. Rather, the government need only demonstrate "reasonable cause" under § 4241(a). The Court finds that the government has carried its burden under § 4241(a) of demonstrating that Mr. Weed "may" be suffering from a mental disease or defect which makes him incompetent to stand trial. Mr. Grundy's testimony does not negate this possibility, and his testimony will be weighed at the competency hearing. The Court will, therefore, hold a competency hearing on January 22, 2002 at 9:30 a.m. The hearing will be conducted pursuant to 18 U.S.C. §§ 4241(c) and 4247(d). At the hearing, the Court will determine whether a preponderance of the evidence demonstrates that Mr. Weed "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense ...." 18 U.S.C. § 4241(d).

> Congress has specifically provided that [p]rior to the date of the [competency] hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

18 U.S.C. § 4241(b). Section 4247(b) provides as follows:

> A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, **by more than one such examiner**. Each examiner shall be designated by the court, except that if the examination is ordered under section 4245 or 4246, upon the request of the defendant an additional examiner may be selected by the defendant. For the purposes of an examination pursuant to an order under section

4241, 4244, or 4245, the court **may** commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, 4243, or 4246, for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court.

18 U.S.C. § 4247(b) (emphasis added).

With its motion, and at the December 21st hearing, the government invoked § 4241(b) and requested that Defendant be examined by another psychiatrist or psychologist. Defendant objected, arguing that he has already been examined by Dr. Grundy, and that there is no need for an additional examination by another doctor. As quoted above, § 4247(b) specifically provides for an examination by more than one examiner if the Court finds it appropriate. The Court finds that an additional examination is appropriate in this case to balance the opinion offered by Defendant's hand-picked psychologist, and to provide the Court with a sound basis upon which to make a determination at the January 22nd competency hearing.

Pursuant to § 4247(b), the government requested that Defendant be committed to the custody of the Attorney General to be evaluated for 30 days in a federal facility located in Springfield, Missouri. Section 4247(b) provides that the Court "may" commit the Defendant to the custody of the Attorney General. The Court is not, however, required to do so by § 4247(b). *See, e.g., In re Newchurch,* 807 F.2d 404, 410 (5th Cir.1986). Section 4247 permits the Court to commit the Defendant to the custody of the Attorney General or to order that the mental status examination be made in some other manner. *Id.* The legislative history to § 4247(b) specifically contemplates examinations on an outpatient basis absent some need for a commitment to a psychiatric facility. S.Rep. No. 225, 98th Cong, 2d Sess. 234, reprinted in 1984 U.S.C.C.A.N. 3417. The government has made no showing why commitment in this case is required. Defendant may be examined here just as he was when examined by Dr. Grundy.

Section 4247(b) requires that the Court "designate" the examiner. By January 3, 2002, the parties shall each submit a list of at least two examiners, including their qualifications. The Court will review the list and designate an examiner pursuant to § 4247(b).

At the conclusion of the hearing, the government requested that the Court order Dr. Grundy to produce all of his work papers. The government has not, however, provided any basis for the request. The Court finds that, pursuant to § 4247(c), the government is entitled to a copy of a report from Dr. Grundy that complies with the requirements of § 4247(c). On or before January 7, 2002, Defendant shall file with the Court, and serve on the government, a report from Dr. Grundy which complies with 18 U.S.C. § 4247(c).

## CONCLUSION

The government's motion for a hearing to determine the Defendant's mental competency to stand trial is **GRANTED.** [Doc. No. 4]. A competency hearing is hereby set for 9:30 a.m. on January 22, 2002.

The issue of whether the videotape submitted by the government is to remain under seal is taken under advisement. The government's motion to seal and brief in support are due on or before January 4, 2002. Defendant's response is due on or before January 14, 2002. The government's reply is due on or before January 19, 2002.

Pursuant to 18 U.S.C. § 4241(b), the Court hereby orders a psychiatric or psychological examination. The Court will not commit Defendant to the custody of the Attorney General for this examination. Rather, the examination will be conducted on an outpatient manner by examining Defendant here. By January 4, 2002, the parties shall each submit a list of at least two examiners, including their qualifications. The Court will review the list and designate an examiner pursuant to § 4247(b).

The Court finds that under 18 U.S.C. §§ 4241(b) and 4247(c), the government is entitled to a report from Dr. Grundy. On or before January 7, 2002, Defendant shall file with the Court, and serve on the government, a report from Dr. Grundy which complies with 18 U.S.C. § 4247(c).

### ORDER [1]

Now before the Court is the United States of America's motion to reconsider the Court's December 27, 2001 Order. For the reasons discussed below, the motion is **GRANTED IN PART and DENIED IN PART.**

## I. INPATIENT EXAMINATION

■ The United States asks the Court to reconsider its decision that psychiatric or psychological evaluation of the Defendant be conducted on an "outpatient," rather than an "inpatient," basis. In particular, the United States seeks an order committing Defendant to the custody of the Attorney General for placement in the United States Medical Center for Federal Prisoners ("USMCFP") in Springfield, Illinois. As support for its request, the United States attaches a letter from William H. Grant, a psychiatrist with the USMCFP.

Dr. Grant opines that an inpatient examination of Defendant is preferable "in this case for reasons of efficiency and because of the superior database it will provide." For the reasons stated in his letter, Dr. Grant believes that an inpatient examination of Defendant would enable him to "provide a forensic opinion with a greater degree of confidence than would evaluation at the Tulsa County Jail."

The Court is, however, still not convinced that the proceedings in this case need to come to a 30 day halt while Defendant is sent off to Springfield, Illinois for a mental competency evaluation. While the Court does not doubt that Dr. Grant could provide a more comprehensive report given a 30 day inpatient evaluation, there is no indication that Dr. Grant cannot give an adequate report based on an outpatient review of Defendant at the Tulsa County Jail, just as Curtis Todd Grundy did. In fact Dr. Grant admits that

> [m]uch can be learned in the course of a one-on-one jail interview. I have done many over the years, expect to do more in the future, and am capable of conducting the Jason Weed interview in Tulsa if called upon to do so.

Dr. Grant's December 21, 2001 Letter.

As previously discussed the legislative history to 18 U.S.C. § 4247(b) expresses a preference for outpatient review absent some specific need for commitment to a psychiatric facility. S.Rep. No. 225, 98th Cong., 2d Sess. 234, reprinted at 1984 U.S.C.C.A.N. 3182, 3417. It is probably always the case that a 30 day commitment for purpose of preparing a mental competency report under § 4247 would produce a more comprehensive report. The United States has not demonstrated, however, that there is some specific reason why an adequate evaluation of Defendant cannot occur here in Tulsa. For example, the

---

1. This Order, and the Court's December 27th Order, were entered pursuant to 28 U.S.C. § 636(b)(1)(A), (3) and (4), and pursuant to the general reference in N.D. LCR 5.1(B).

United States has not demonstrated that there is some diagnostic test or procedure that can only be performed on an inpatient basis and could not be performed at the Tulsa County Jail.

The Court agrees with the United States that *In re Newchurch*, 807 F.2d 404 (5th Cir.1986), relied on by the Court in its December 27th Order, is distinguishable on the basis asserted by the United States—that the Defendant in *Newchurch* was on bond and that her proposed commitment implicated liberty concerns which may not be present in this case given that Mr. Weed is detained pending trial. Nevertheless, the Court cited *Newchurch* in its December 27th Order not because of its factual similarity to this case, but to support its reading of § 4247(b) as giving the Court discretion over the issue of commitment. For the reasons discussed above, the Court now exercises that discretion and find no basis for requiring an inpatient commitment of Defendant in this case. The United States' motion to reconsider the Court's requirement of an outpatient examination of Defendant is **DENIED**.

## II. DESIGNATION OF AN ADDITIONAL EXAMINER

In its December 27th Order, the Court required both parties to submit 2 names of examiners for possible designation pursuant to 18 U.S.C. § 4247(b). The United States has moved to reconsider, asking permission to submit the name of only one examiner—Dr. Grant. The motion to reconsider is **GRANTED**. The United States' obligation under the December 27th Order is discharged.

## III. RULES OF EVIDENCE

█ In its December 27th Order, the Court determined that the Federal Rules of Evidence would be applied in this proceeding to determine Defendant's mental competency to stand trial under 18 U.S.C. § 4241.

At the December 21st hearing, the government argued that the rules of evidence did not apply, focusing the Court's attention on the "preliminary examinations" exception in Rule 1101(d)(3). That is, therefore, the only section with which the Court concerned itself in its December 27th Order, finding that Rule 1101(d)(3)'s reference to "preliminary examinations" is a reference to the "preliminary examination" contemplated by Fed.R.Crim.P. 5.1. In was in this context that the Court cited and relied upon *United States v. Veon*, 538 F.Supp. 237, 249 n. 18 (E.D.Ca.1982). The United States does not take issue with this finding, but now raises a variant of its original argument.

The United States moves to reconsider on the ground that Fed.R.Evid. 1101(d), which delineates proceedings to which the rules of evidence are not applicable, is not an exhaustive list. The Court recognizes that Rule 1101(b) states that the Federal Rules of Evidence "apply generally ... to criminal cases and proceedings." Use of the word "generally" implies that there are exceptions which are not specifically contemplated by the Rule itself. 31 Wright & Gold, *Federal Practice and Procedure: Evidence* § 8073, p. 600 (2000). While the Court agrees that Rule 1101(d)(3) does not provide an exhaustive list of exceptions, the United States has not persuaded the Court to add mental competency to the list of proceedings to which the rules of evidence are inapplicable.

Section 4257(d) of Title 18 of the United States Code provides that at any hearing regarding a person's mental condition, that person "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." Thus, a hearing regarding a person's mental condition is to have all of the hallmarks of an adversarial pro-

ceeding. It would seem strange, therefore, that the rules of evidence would not apply to such a hearing. Absent some historical precedent or compelling policy reasons as to why the rules of evidence should not be applied to a particular criminal proceeding, the Court will heed Rule 1101(b) and apply them generally to criminal proceedings.

The cases which the United States cites in support of its position are distinguishable. In *United States v. Zannino*, No. 83–235–N, 1985 WL 2305 (D.Mass. June 5, 1985), the Court had before it a motion by a criminal defendant to continue his trial because of his alleged physical inability, caused by health problems, to proceed to trial. At the hearing on the defendant's motion to continue, the defendant argued that the hearing should be governed by the Federal Rules of Evidence. In support of his position, the defendant argued by analogy that because the rules of evidence would apply to mental competency hearings under § 4247(d), they should also be applied to determine his physical ability to proceed to trial.

The court in *Zannino* made the following comment about the defendant's § 4247(d) analogy:

> [T]he Court is not persuaded by the defendant's contention that because reference is made in 18 U.S.C. § 4247(d) to presentation of evidence and cross examination of witnesses, the Federal Rules of Evidence necessarily apply. Notwithstanding defendant's arguments, the statute is not trenchantly clear as to the applicability of the rules. However, in that mental competency is not an issue in the case sub judice, this Court declines to decide the issue.

*Id.* at *3 n. 3. The court in *Zannino* also spent several paragraphs in the text of its opinion finding, for the reasons stated therein, that physical incompetency cannot be analogized to mental incompetency; a physically incompetent person could in some instances be required to stand trial, while a mentally incompetent person could never be required to stand trial. *Id.* at **2–3. Thus, the Court in *Zannino* refused to make any findings regarding the very issue presented by this case.

In *United States v. Palesky*, 855 F.2d 34 (1st Cir.1988), the defendant had been found not guilty of bank robbery by reason of her insanity. The sentencing judge did not immediately commit the defendant to the Attorney General as required by 18 U.S.C. § 4243. Rather, he released her to her husband's care. The First Circuit reversed and on remand ordered the sentencing judge to commit the defendant as required by § 4243. The court noted, however, that in 40 days the defendant would be entitled to a hearing under § 4243(d) to demonstrate that her release "would not create a substantial risk of bodily injury to another person or serious damage of property to another." 18 U.S.C. § 4243(d). The First Circuit held that because the determination to be made at the § 4243(d) hearing was analogous to a bail determination under 18 U.S.C. § 3146, and because Rule 1101(d)(3) specifically makes the rules of evidence inapplicable to bail or detention proceedings, the rules of evidence should not apply to hearings under § 4243(d). *Palesky*, 855 F.2d at 35–36.

All of the exceptions listed in Rule 1101(d) have some historical precedent or some strong policy reason supporting the inapplicability of the rules of evidence to the proceedings listed there. *See generally* 31 Wright & Gold, *Federal Practice and Procedure: Evidence* § 8077 (2000). The United States has not, however, attempted to analogize the mental competency determination to be made under 18 U.S.C. § 4241 to any of the types of proceedings listed in Rule 1101(d), as the court did in

*Palesky.* The United States has also not offered any historical precedent or policy reasons of its own to demonstrate why the Federal Rules of Evidence should not apply to determinations under § 4241, especially in light of § 4247(d). The Court will not, therefore, modify its prior ruling on this issue. The Court will apply the Federal Rules of Evidence to any proceedings under § 4241 in this case. The United States' motion to reconsider is **DENIED** to the extent it seeks a ruling otherwise.

### CONCLUSION

The United States of America's motion to reconsider the Court's December 27, 2001 Order, filed January 4, 2002, is hereby **GRANTED IN PART** and **DENIED IN PART**. The Court's December 27th Order stands as the order of the Court except to the extent it requires the United States to designate at least two examiners. The United States may designate one examiner as it has done.

IT IS SO ORDERED.

### ORDER

Now before the Court is the "Government's Motion to Maintain Seal." [Doc. No. 12]. In connection with its motion under 18 U.S.C. § 4241(a) requesting a hearing to determine the competency of Defendant to stand trial, the government offered into evidence a tape of an interrogation of Defendant in the Tulsa County Jail shortly after his arrest for the charges pending in this case. The Court admitted the tape into evidence in connection with the government's § 4241(a) motion; ordered it sealed over the Defendant's objection; and ordered the parties to file briefs on the issue of maintaining the court seal on the videotape. The government has now filed its motion to maintain the seal, and Defendant has responded. [Doc. No. 21]. For the reasons discussed below, the government's motion to maintain seal is **GRANTED.**

## I. DEFENDANT'S SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL

■■ Defendant argues that maintaining the seal on the videotape introduced as evidence by the government would violate his Sixth Amendment right to a public trial. The parties agree that the Sixth Amendment to the United States Constitution specifically guarantees Defendant the right to a "public trial," and that this right extends to court proceedings beyond the actual proof at trial. *Waller v. Georgia,* 467 U.S. 39, 44–47, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). However, while the Sixth Amendment sets up a presumption of openness, the right to a public trial "may give way in certain cases to other rights or interests . . . ." *Nieto v. Sullivan,* 879 F.2d 743, 751 (10th Cir.1989).

■ The showing the government must make to override the Sixth Amendment's presumption of openness depends on whether it is seeking a total closure of the proceedings or only a partial closure. When the government seeks a total closure,

> [t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

> Under *Press–Enterprise,* the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the

proceeding, and it must make findings adequate to support the closure. *Waller*, 467 U.S. at 48, 104 S.Ct. 2210. The *Press–Enterprise/Waller* standard does not, however, apply when the government seeks only a partial closure of a hearing.

■■■ When the government seeks a partial closure, the "overriding interest" standard articulated in *Press–Enterprise/Waller* is replaced with a less demanding "substantial reason" test. *Nieto*, 879 F.2d at 753. As the Fifth Circuit has recognized,

> [t]he Second, [Fifth,] Eighth, Ninth, Tenth, and Eleventh Circuits have all found that *Waller's* stringent standard does not apply to partial closures, and have adopted a less demanding test requiring the party seeking the partial closure to show only a "substantial reason" for the closure.... [T]hese courts have all based their decisions on a determination that partial closures do not implicate the same fairness and secrecy concerns as total closures.

*United States v. Osborne*, 68 F.3d 94, 98–99 (5th Cir.1995) (footnotes omitted).

In this case, the government has never sought total closure of the competency proceedings. All of the competency proceedings (i.e., the § 4241(a) and the § 4241(d) stages) have been open and attended by the public, including the press. The only aspect of the competency proceedings which has been closed is the sealing of the videotape in question, which the government submitted under § 4241(a) because it raised questions as to Defendant's competency to stand trial. The Court finds, therefore, that this is a partial closure case like *Nieto* and not a total closure case like *Waller*. The Court will, therefore, apply a "substantial reason" test rather than an "overriding interest" test.

■■■ The Court finds that the government has articulated a substantial reason for the sealing of the videotape in question. It is highly possible that one of the central issues in this criminal prosecution will be whether Defendant possessed the mental state necessary to form the requisite intent to commit the crime alleged. The videotape contains evidence dealing with one aspect of that issue. It does not, however, present the entire picture. Furthermore, the government submitted the videotape under § 4241(a) not to establish that Defendant was incapable of forming intent on the day of the alleged crime, but to discharge its duty to report to the Court and request a competency hearing whenever one of its attorney's has information causing him to have reasonable doubt as to the present competency of a criminal defendant to assist in his own defense. *See United States v. Varner*, 467 F.2d 659, 661 (5th Cir.1972).

Given the nature of the crime alleged in this case, the media interest in this case has been significant as compared to most criminal cases prosecuted in this district. Numerous newspaper articles and television stories have been broadcast in Tulsa and surrounding areas, from which any potential *venire* will be drawn. It is, therefore, likely that the contents of the tape, or at least a summary of its contents would be widely reported in this community. The government's ability to obtain a fair trial would be compromised because the community of potential jurors would have been exposed to only one piece of the otherwise complex puzzle which will make up the factual question surrounding the Defendant's mental state on the day of the alleged crime. The Court finds that avoiding the prejudice caused by such a one-sided doling out of evidence prior to trial provides a substantial reason for sealing the videotape prior to trial.

The Court finds that sealing the videotape until trial is essential to preserve the

government's right to a fair trial. Defendant has offered no other solutions. The Court also finds that the government's proposal that the tape be sealed until the jury in this case has been selected and sworn is narrowly tailored to protect its right to a fair trial. The tape will not be permanently sealed from public view. The interests protected by the Sixth Amendment will, therefore, ultimately be served. *See Nieto,* 879 F.2d at 753 (discussing the interests protected by the Sixth Amendment).

## II. THE PUBLIC'S FIRST AMEND-MENT RIGHT TO PUBLIC AC-CESS

■ The Court recognizes that the "First Amendment guarantees the right of the press and the public to attend criminal **trials** and certain preliminary proceedings in criminal cases." *United States v. Gonzales,* 150 F.3d 1246, 1255 (10th Cir.1998) (emphasis added). The Supreme Court has not yet ruled on "whether there is a constitutional right of access to court **documents** and, if so, the scope of such a right." *United States v. McVeigh,* 119 F.3d 806, 812 (10th Cir.1997) (emphasis added). However, when confronted with the issue of access to court records, the Tenth Circuit has assumed that the test established by the Supreme Court in *Press–Enterprise II* for restrictions on public access to court proceedings would also be applied to restrictions on public access to court documents. *Gonzales,* 150 F.3d at 1256.

In *Press–Enterprise II,* the Supreme Court established "tests of experience and logic" to determine whether a First Amendment right of access applies to a particular trial-related process. *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*). If, after applying these tests, a qualified First Amendment right of access is found to exist, the right

may be overcome by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.... Interests other than those of the accused may be considered." *Gonzales,* 150 F.3d at 1256.

Neither the government nor the Defendant has raised First Amendment arguments in this case, and the Court is reluctant to make findings on an issue that has not been properly presented. There are several issues which would have to be addressed before the Court could rule in this area. For instances, using the *Press–Enterprise II* "experience and logic" standard, does a First Amendment right of access attach to materials admitted in connection with a competency proceeding. Without deciding the issue, the Court is not convinced that "experience and logic" require a right of access to all aspects of a competency proceeding.

Assuming that a First Amendment right of access does attach to the videotape in question, must the government show an "overriding interest" or a "substantial reason" to overcome the public's right of access? In other words, is *Press–Enterprise II's* "overriding interest" standard limited to total closure cases just as *Waller's* overriding interest standard in the Sixth Amendment context was limited by the Tenth Circuit in *Nieto* to total closure cases? It would seem anomalous to limit an accused's Sixth Amendment right to a public trial more severely than the public's First Amendment right of access to that same accused's trial proceedings. Again, without deciding the issue, it would seem that the public's First Amendment rights in this case would be limited in the same fashion as Defendant's Sixth Amendment rights in this case. The government would, therefore, need only show a "substantial reason" to overcome the public's

right of access; and, as previously discussed, the government has already made such a showing in this case.

Because Defendant has not asserted the First Amendment in opposition to the government's motion to maintain the videotape under seal, the Court makes no findings based on the First Amendment. If a member of the media or public wishes to intervene and assert a right of access to the videotape, the Court will consider the issue at that time.

### CONCLUSION

The "Government's Motion to Maintain Seal" on the videotape submitted in connection with its motion under 18 U.S.C. § 4241(a) is **GRANTED.** [Doc. No. 12]. The videotape shall remain under seal until a jury has been picked in this case. Once a jury has been sworn in this case, the seal on the videotape shall be lifted.

IT IS SO ORDERED.