UNITED STATES of America, Appellee,

v.

Abraham KASTO, Appellant.

No. 78–1042.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1978.

Decided Sept. 18, 1978.

Rehearing Denied Oct. 13, 1978.

Terry L. Pechota, Mission, S. D., for appellant.

Gary G. Colbath, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; David V. Vrooman, U. S. Atty., Sioux Falls, S. D., on brief.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Abraham Kasto appeals from his conviction of rape in violation of 18 U.S.C. §§ 1153 and 2031. The primary issue raised on appeal is whether the District Court erred in prohibiting the introduction of evidence as to the reputation of the prosecutrix for unchastity, as to her specific prior acts of sexual intercourse with men other than the defendant, and as to the fact that she was wearing an intrauterine contraceptive device at the time of the incident. We hold that the exclusion of this evidence was not an abuse of discretion.

Beth Renee Jennings, the prosecutrix, was an Iowa State University student who was living on the Cheyenne River Indian Reservation in South Dakota. She came to South Dakota on March 20, 1977, as a participant in a cultural exchange program sponsored by the University and the Cheyenne River Indian Reservation YMCA. At about 11:00 P.M. on March 27, 1977, Jennings was awakened at her residence by Kasto, who had been previously introduced to her as a representative of the YMCA. She turned on the lights, let Kasto in and engaged in casual conversation with him for about forty-five minutes. Kasto then asked her to take a ride with him in his truck. During the ride, Kasto drank whiskey while they discussed the YMCA program on the reservation. After a few minutes, Kasto stopped the truck. Jennings asked to be taken home, but Kasto refused.

A scuffle ensued, during which Jennings was pulled from the truck and raped by Kasto on the ground. He then drove her to his house, where he raped her twice. She escaped from the house and went to the home of neighbors who took her to a local hospital. She was treated for skin abrasions and a laboratory examination revealed the presence of sperm in her vagina. Jennings was the only witness to testify as to the events surrounding the rapes.

Prior to trial, the government moved for a court order prohibiting the defense from making any reference at trial to any sexual activities which Jennings may have had with men other than Kasto, and from making any reference to the fact that she was wearing an intrauterine contraceptive device at the time of the alleged rape. The District Court granted the motion on the basis that a rape victim's reputation for unchastity and evidence of her specific acts of sexual intercourse with men other than the defendant are irrelevant to either her general credibility as a witness or to the issue of her consent to intercourse with the defendant on the date charged.

Kasto challenges this ruling on two grounds. First, he argues that, under *Packineau v. United States*, 202 F.2d 681 (8th Cir. 1953), evidence of Jennings' reputation for unchastity or prior acts of sexual intercourse with men other than the defendant, and evidence of her use of an intrauterine contraceptive device, were relevant to the issue of her consent to have intercourse with him. He argues that, under Fed.R.Evid. 401, the fact that Jennings may have consented to sexual intercourse with others, and wore a contraceptive device ostensibly for that purpose, would make the consequential fact of her consent to intercourse with him more likely.

In *Packineau v. United States, supra*, the Court held that the trial court's ruling which prohibited cross-examination of the prosecutrix as to her cohabitation with a young man a few months before the alleged rape was prejudicial error requiring a new trial. *Id.* at 685. The Court reasoned that

such evidence was necessary to reasonably test the credibility of the prosecutrix. In the view of the majority,

> That her story of having been raped would be more readily believed by a person who was ignorant of any former unchaste conduct on her part than it would be by a person cognizant of the unchaste conduct defendants offered to prove against her seems too clear for argument.
>
> * * * To an ordinary person called on to make an appraisal of [the prosecutrix's] accusation that one of the young men with whom she was out for dalliance on this night had raped her, the reaction would certainly be very different if it were known that she had been openly cohabiting with a young man only a few months before than it would be if she were the unsophisticated young lady she appeared to be.

*Id.* at 685–686.

Judge Sanborn dissented. In his view, the trial court did not err in limiting such cross-examination of the prosecutrix because the evidence which the defense sought to introduce was "incompetent, irrelevant and immaterial and had no bearing whatever upon any issue in the case." *Id.* at 688–689. He reasoned that any woman, even one who may have engaged in consensual, extra-marital sexual activities with other men, "has some freedom of selection, and consent obtained from such a woman by a stunning blow on the jaw is no consent at all." *Id.* at 689.

We believe that Judge Sanborn's dissent has withstood the test of time and is supported both in logic and in human experience.[1] The fact that a rape victim has engaged in consensual sexual relations with the defendant in the past under similar conditions may have some logical relevance to the question of consent to the act charged, and evidence of prior sexual activity with the defendant under dissimilar circumstances may also have some logical relevance, but "[w]hen both identity of persons and similarity of circumstances are removed, * * * probative value all but disappears." Ordover, *Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity*, 63 Cornell L.Rev. 90, 106 (1977). Although Judge Sanborn's dissenting views were limited to the elicitation of such evidence during the cross-examination of the prosecutrix, we feel that the same logic applies to direct examination testimony sought to be introduced by the defense. We, therefore, conclude that absent circumstances which enhance its probative value,[2] evidence of a rape victim's unchastity, whether in the form of testimony concerning her general reputation or direct or cross-examination testimony concerning specific acts with persons other than the defendant, is ordinarily insufficiently probative either of her general credibility as a witness[3] or of her consent

---

1. See Ordover, *Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity*, 63 Cornell L.Rev. 90, 96–102 (1977); Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum.L.Rev. 1, 55–56 (1977); Note, *Indiana's Rape Shield Law: Conflict With the Confrontation Clause?*, 9 Ind.L.Rev. 418, 428–430 (1976); Note, *If She Consented Once, She Consented Again—A Legal Fallacy in Forcible Rape Cases*, 10 Val.U.L.Rev. 127 (1976).

2. Such circumstances might include where the evidence is explanative of a physical fact which is in evidence at trial, such as the presence of semen, pregnancy, or the victim's physical condition indicating intercourse, *see State v. Cosden*, 18 Wash.App. 213, 219, 568 P.2d 802, 806 (1977); *State v. McDaniel*, 204 N.W.2d 627, 629 (Iowa 1973), or where the evidence tends to establish bias, prejudice, or an ulterior motive surrounding the charge of rape. *See Shoemaker v. State*, 58 Tex.Cr.R. 518, 126 S.W. 887, 889 (1910). Sexual history might also be relevant where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue. *See* Ordover, *supra* at 93–94, 110–119.

3. Some cases have held that evidence of a rape victim's unchastity is admissible for the sole purpose of impeaching the rape victim's credibility as a witness, on the theory that a woman of bad moral character is less likely to speak the truth than is a woman of good moral character. *This thinking is reflected in State v. Coella*, 3 Wash. 99, 106, 28 P. 28, 29 (1891):
   > She [the prosecutrix] could not have ruthlessly destroyed that quality [chastity] upon which most other good qualities are dependent, and for which, above all others, a woman

to intercourse ·with the defendant on the particular occasion charged to outweigh its highly prejudicial effect. *See United States v. Stone,* 472 F.2d 909, 916 (5th Cir. 1973); *McLean v. United States,* 377 A.2d 74 (D.C.App.1977); *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976) (en banc); *People v. Whitfield,* 58 Mich.App. 585, 228 N.W.2d 475 (1975); *State v. Geer,* 13 Wash.App. 71, 73, 533 P.2d 389, 391 (1975); *Ordover, supra* at 108; Note, *If She Consented Once, She Consented Again—A Legal Fallacy in Forcible Rape Cases,* 10 Val.U.L.Rev. 127, 155–159 (1976). *Contra, see, e. g., Government of the Virgin Islands v. John,* 447 F.2d 69, 73 (3d Cir. 1971). To the extent that the majority opinion in *Packineau v. United States, supra,* is inconsistent with this conclusion, that case is hereby overruled.[4]

◼ The weighing of the probative value of such evidence against its prejudicial effect is, of course, entrusted to the broad discretion of the trial judge. *See* Fed.R.Evid. 401, 403; *United States v. Matlock,* 558 F.2d 1328, 1332 (8th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977). Our examination of the record in the instant case satisfies us that the ruling by the District Court prohibiting any reference to any sexual activity which Jennings may have had with men other than Kasto, and to the fact that she was wearing an intrauterine contraceptive device at the time of the incident, was not an abuse of discretion. Any relevance which this evidence may have had to the issue of her consent to sexual relations with Kasto was outweighed by its prejudicial effect. Since we agree with the District Court that the evidence sought to be introduced by Kasto fails the threshold test of relevancy,

we need not reach his contentions that the admission of this evidence would have been permitted by Fed.R.Evid. 404 and 608.

◼ Kasto also argues that his inability to cross-examine Jennings as to her prior sexual activities and her use of an intra-uterine contraceptive device denied him his Sixth Amendment right to confront the witness against him. This claim is without merit. The Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence. *See United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Since we have upheld the District Court's determination that the proffered evidence was irrelevant to the issue of Jennings' consent to sexual relations with Kasto, its exclusion deprived him of no constitutional right.

Kasto next contends that he was impermissibly denied the opportunity to cross-examine Jennings as to any sexual activities which she may have had immediately prior to the alleged rape, which may have been relevant to the source of the semen found in her subsequent medical evaluation. Although the sexual activities of a prosecutrix immediately prior to an alleged rape may be a relevant area for cross-examination by the defense, our reading of the record convinces us that the failure of defense counsel to pursue this line of inquiry was not the result of any express prohibition on such questioning by the District Court. Prior to trial, the government stated that it intended to ask Jennings at trial whether she had

is reverenced and respected, and yet retain her credit for truthfulness unsmirched * * *. *See also Anderson v. State,* 104 Ind. 467, 471, 4 N.E. 63, 65 (1885). Other courts have repudiated such views. It is obvious that the mere fact of unchastity of a victim has no relevance whatsoever to her credibility as a witness. Such a proposition would "necessarily imply the absurd [corollary] that the extramarital sexual history of a female witness would be admissible to impeach her credibility in any case in which she testified." *State ex rel. Pope*

*v. Superior Court,* 113 Ariz. 22, 545 P.2d 946, 950 (1976) (en banc). *See also McLean v. United States,* 377 A.2d 74, 78 n.8 (D.C.App.1977); *State v. Geer,* 13 Wash.App. 71, 74–75, 533 P.2d 389, 391 (1975).

4. This opinion was circulated to all judges in regular active service and a majority of the Court has expressly approved this panel decision overruling *Packineau v. United States,* 202 F.2d 681 (8th Cir. 1953).

intercourse with anyone within forty-eight hours of the alleged incident, and requested a ruling from the court as to whether such a question would open the door to inquiry by the defense as to any sexual activities which Jennings may have had at other times with other men. When, however, defense counsel stated that he had no evidence that Jennings had intercourse with anyone within forty-eight hours of the alleged rape, the government agreed not to ask the question at trial, and no ruling on the implications of its asking was made by the District Court. Later, when Jennings was examined *in camera*, she stated in response to the government's question, that she had had no sexual relations with anyone from the time of her arrival in South Dakota until the incident with Kasto on the night of March 27. The defense did not cross-examine Jennings as to the truth of this statement.

■ Kasto also argues that he should have been permitted to question Jennings and the examining physician as to the type of contraceptive device that she was wearing at the time of rape. We find no merit to this contention. The defense was permitted to question Jennings *in camera* as to the type of device she was wearing, and there was no evidence from her testimony that it was other than an intrauterine contraceptive device. Although the defense had access to the physician's report prior to trial, no request was made to question the physician about this issue until after the government had rested and the witness had been dismissed. Under these circumstances, any right which the defense might have had to make an offer of proof on the basis of the physician's testimony was waived.

■ Next Kasto asserts that the District Court's denial of his request for a court-reimbursed investigator pursuant to 18 U.S.C. § 3006A(e)(1) denied him a fair trial. He argues that the services of an investigator were necessary in order to interview Jennings in advance of trial and in order to investigate her reputation for chastity and truth and veracity where she had lived in Iowa.

Section 3006A(e)(1) is a remedial statute which attempts to place indigent defendants on a footing closer to that of the prosecution which has the resources of the government at its disposal. *United States v. Sailer*, 552 F.2d 213, 215 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). Accordingly, "[w]hile a trial court need not authorize an expenditure under subdivision (e) for a mere 'fishing expedition,' it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge." *United States v. Schultz*, 431 F.2d 907, 911 (8th Cir. 1970) (footnote omitted). *Accord, United States v. Sailer, supra.* Any application for § 3006A(e)(1) funds must be evaluated against a standard of reasonableness, which reflects the facts present in the particular case. *United States v. Schultz, supra* at 911–912.

Our review of the record convinces us that the District Court's denial of Kasto's request was not an abuse of discretion. *See United States v. Sailer, supra* at 215. In his order denying Kasto's § 3006A(e)(1) request, the District Court appointed a second attorney to assist in Kasto's defense and authorized both counsel to undertake whatever investigation that appeared to be reasonable under the circumstances. No showing has been made as to why the two lawyers appointed by the court could not perform any investigative work required.[5] *See United States v. Harris*, 542 F.2d 1283, 1316 (7th Cir. 1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). There is no dispute that Jennings was in South Dakota immediately prior to trial and was available for interviewing by the defense at

---

**5.** Counsel's argument that he was too unfamiliar with Iowa to personally conduct the investigation is unconvincing. The defense states in its brief before this Court that the police department in Iowa Falls was contacted concerning Jennings' reputation for unchaste conduct and for truth and veracity, but that no information was obtained. Apparently, no further contacts were attempted by the defense.

that time. The failure of defense counsel to interview her then or at any prior time cannot be attributed to the District Court's denial of outside investigative services under § 3006A(e)(1).[6]

Kasto next contends that the indictment made contradictory allegations or, if the allegations of the indictment are viewed as consistent with one another, then the jury instructions were insufficient since they failed to reflect the precise wording of the indictment. We find that the indictment fairly informed Kasto of the offense charged, see United States v. Fleming, 526 F.2d 191 (8th Cir. 1975), cert. dismissed, 423 U.S. 1082, 96 S.Ct. 872, 47 L.Ed.2d 93 (1976), and that the instructions taken as a whole properly instructed the jury as to the essential elements of the offense. See United States v. Williams, 505 F.2d 947, 948 (8th Cir. 1974).

■ Kasto next contends that since the death penalty imposed by § 2031 is unconstitutional under Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), the entire section must fall. We disagree. In United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Supreme Court held that the unconstitutionality of the capital punishment provision of the Federal Kidnapping Act, 18 U.S.C. § 1201(a), did not require the defeat of the law as a whole. The Court stated:

> The clause in question is a functionally independent part of the Federal Kidnapping Act. Its elimination in no way alters the substantive reach of the statute and leaves completely unchanged its basic operation. Under such circumstances, it is quite inconceivable that the Congress which decided to authorize capital punishment in aggravated kidnapping cases would have chosen to discard the entire statute if informed that it could not include the death penalty clause now before us.

Id. at 586, 88 S.Ct. at 1218 (footnote omitted).

Similarly, invalidation of the maximum penalty imposed by § 2031 does not in any way alter the substantive reach of that section or render it unconstitutionally vague.

■ Kasto also contends that he has been deprived of equal protection of law since, as an Indian charged with the rape of a non-Indian under 18 U.S.C. §§ 1153 and 2031, he was subject to a maximum penalty of life imprisonment upon conviction, while a non-Indian charged with the same offense under South Dakota law would be subject to a maximum of only twenty years' imprisonment. In United States v. Antelope, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977), the Supreme Court held that it is of no constitutional significance that a federal scheme for the punishment of a particular offense differs from a state criminal code otherwise applicable within the boundaries of the state where the reservation lies. Id. at 648–650, 97 S.Ct. 1395. We are bound by that decision.[7]

■ Lastly, Kasto contends that his motion for a mistrial should have been granted when the prosecution asked Dwight Call, the director of the local YMCA program, whether Kasto resigned from the YMCA's Board of Directors after the charges against him were brought. Objection to this question was made by defense counsel, and the objection was sustained prior to any answer by the witness. The jury was then admonished by the court to disregard the question, and this admonition was repeated in the court's instructions. We conclude that, under these circumstances, the failure of the District Court to declare a mistrial was not an abuse

---

6. Kasto does not contend that he was denied effective assistance of counsel and, thus, we do not address that issue.

7. United States v. Big Crow, 523 F.2d 955 (8th Cir. 1975), cert. denied, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976), cited by Kasto, is inapposite. In Big Crow, the issue was not disparate treatment under state, as opposed to federal, law but rather the differing penalties imposed on Indians and non-Indians for the same offense under federal law. See United States v. Antelope, 430 U.S. 641, 649 n.11, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977).

of discretion.  *See United States v. Vitale,*
549 F.2d 71, 72–73 (8th Cir.), *cert. denied,*
431 U.S. 907, 97 S.Ct. 1704, 52 L.Ed.2d 393
(1977).[8]

The judgment is affirmed.

---

**8.** Subsequently to the preparation of this opinion and before its circulation, Kasto filed a motion in this Court requesting that we partially remand this case to the District Court or consider a jurisdictional issue raised by *United States v. Dupris,* Crim. No. 77–30056–01 (D.S.D., filed June 29, 1978).  Kasto claims that under *Dupris,* the land on which the events here transpired was not Indian Country as defined by 18 U.S.C. § 1151(a).  We deny Kasto's motion, without prejudice to his raising it again in a post-conviction proceeding.