**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George Don GALLOWAY, a/k/a Saul
D. Davis, Defendant–Appellant.**

**No. 90–4008.**

United States Court of Appeals,
Tenth Circuit.

June 28, 1991.

Tena Campbell, Asst. U.S. Atty. (Dee Benson, U.S. Atty., with her on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Jill M. Wichlens, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

Before SEYMOUR and EBEL, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

The defendant-appellant George Don Galloway was convicted of kidnapping in violation of 18 U.S.C. § 1201(a)(1). The indictment alleged that he abducted an eighteen-year-old girl from a shopping mall in West Valley City, Utah, for the purpose of sexually abusing her and extorting money from her, and that he transported her in interstate commerce, from the state of Utah through the states of Idaho, Oregon, California, and Nevada. The defendant was found guilty by a jury and was sentenced to life imprisonment. He alleges that several errors were committed in the course of his trial and at sentencing.

I. *Effective Assistance of Counsel at Trial.*

Appellant first contends that he was denied his Sixth Amendment right to effective assistance of counsel at the trial because his attorney informed the jury that the defendant had numerous prior convictions. Before the trial, the government gave notice that it would use the defendant's prior convictions to impeach him if he testified. By way of a pretrial motion, the defendant's attorney sought to limit the introduction of this evidence under Rule 609. The district court did not specifically rule on the admissibility of the convictions at the pretrial hearing, however, indicating that they would have to be individually evaluated at the time the defendant testified. The court's comments at this pretrial hearing may be interpreted as indicating that the convictions would likely be admitted. Tr. Vol. I at 62–64. In his opening statement, the defendant's attorney brought up the fact that his client had numerous prior convictions. The attorney attempted to use these prior convictions to show that the defendant did not have the intent to commit the crime. He sought to show that the defendant, who had spent a fair amount of time in prison, was from a background so different from the complaining witness that he misinterpreted her actions as acquiescence to his advances. The attorney later elicited the fact of these prior convictions from the defendant during the defendant's testimony on direct examination. Appellant contends that evidence of many of these convictions would have been inadmissible and that his attorney's failure to keep as many as possible out of the trial amounted to ineffective assistance of counsel.

In order to find that the defendant was denied effective assistance of counsel, we would have to find that the conduct of his attorney "so undermined the proper functioning of the adversary process that the trial cannot be relied on as having produced a just result." *United States v. Rivera,* 900 F.2d 1462, 1472 (10th Cir.1990) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To establish this the defendant must show: 1) that counsel's performance was deficient, with reference to prevailing professional norms, and 2) that the deficient performance prejudiced the defense. *Id.* Under

---

* The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

the circumstances presented, we find that trial counsel's performance was not deficient. The government had a strong evidentiary case against the defendant. The only possible basis for a defense was to establish that the complaining witness went with the defendant willingly or that the defendant believed she went willingly. The complaining witness testified that she did not go with the defendant voluntarily, however, and there was strong circumstantial evidence to support her testimony and her credibility. Thus, the defense was left with the task of persuading the jury that the defendant somehow misinterpreted the complainant's actions as consenting to his advances. Faced with this situation, the defense sought to use evidence of the defendant's prior convictions to show that the defendant and the complainant were "from two different worlds" and that they misunderstood each others' intentions. Although it is quite possible that some of the defendant's prior convictions would have ultimately been found to be inadmissible, it almost certain that some of them would have been admitted. We do not find that the defense's decision to inform the jury of these convictions and to allow them into evidence was deficient with regard to prevailing professional norms. In light of the evidence against the defendant, counsel's decision was a legitimate tactical move that this court will not second guess. *See Denton v. Ricketts*, 791 F.2d 824, 828 (10th Cir.1986) ("Counsel's actions were based properly on informed strategic choices and are well within the range of professionally reasonable judgments."). Counsel's actions here did not undermine the proper functioning of the adversary process; on the contrary, they were informed strategic choices. Defense counsel did not blindly allow evidence of the defendant's prior actions to come in. In fact, counsel successfully kept out evidence of a prior attempted rape that would have been devastating to the defense. We find that the defendant was not denied his Sixth Amendment right to the effective assistance of counsel.

## II. Partial Closure of the Trial.

Appellant's next contention is that his Sixth Amendment right to a public trial was violated by the district court's order partially closing the courtroom to the public. Over the defendant's objection, the district court granted a government motion to partially close the courtroom during the complaining witness' testimony. The courtroom was closed to all but the defendant, the relatives of the complaining witness and the defendant, courtroom personnel, attorneys for the parties, and the press. Tr. Vol. II at 72–73. The government's stated purpose for seeking the partial closure was to protect the complaining witness. The district court granted the motion without making any findings as to the need for closure. Appellant contends that the district court failed to meet the requirements set forth by the Supreme Court concerning closures of the courtroom and argues that we must therefore reverse his conviction.

■ The Sixth Amendment guarantees every criminal defendant a "speedy and public trial." U.S. Const.Amend. VI. "Although the right to an open trial is not absolute, that right will only rarely give way to other interests." *Davis v. Reynolds*, 890 F.2d 1105, 1109 (10th Cir.1989) (citing *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)). In *Davis* we cautioned that "an accused's right under the Sixth Amendment must be carefully balanced against the government's competing interest in protecting vulnerable witnesses from embarrassment and harm." *Davis*, 890 F.2d at 1109. We also noted the Supreme Court's emphasis on the need for specific findings to help determine whether an order of closure is proper:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* (citing *Waller*,.467 U.S. at 45, 104 S.Ct. at 2215). *See also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581, 100

S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980) ("Absent an overriding interest, articulated in findings, the trial of a criminal case must be open to the public.") The requirements for the total closure of a trial were set forth by the Supreme Court in *Waller:* "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. at 2216. In *Nieto v. Sullivan,* 879 F.2d 743 (10th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 373, 107 L.Ed.2d 359 (1989), we recognized that a different standard applies where the courtroom is only partially closed to the public, as was the case in the district court. In such circumstances, the partial closure need only be supported by a "substantial" interest, rather than a "compelling" one. Nevertheless, the trial court must make sufficient findings to allow the reviewing court to determine whether the partial closure was proper. *Cf. Nieto,* 879 F.2d at 753.

■ The government contends that the judgment should be affirmed because the order of partial closure furthered a substantial interest—the protection of the complaining witness. This court has previously recognized that the government may have a substantial or compelling interest in protecting young witnesses who are called to testify in cases involving allegations of sexual abuse. *See e.g., Davis,* 890 F.2d at 1110 (citing *Globe Newspaper Co. v. Superior Court for Norfolk County,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982) and *United States ex rel. Latimore v. Sielaff,* 561 F.2d 691 (7th Cir.1977), *cert. denied,* 434 U.S. 1076, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1978)). *See also United States v. Sherlock,* 865 F.2d 1069, 1077 (9th Cir.1989). The age of an alleged victim, the nature of an alleged offense, and the potential for harm to the victim are appropriate factors to consider in weighing an accused's right to a public trial against the government's interest in protecting a victim from undue harm. *Davis,* 890 F.2d at

1110. The district court must consider these factors and any others with reference to the specific facts of each case, however, and must outline those facts that make closure necessary. The Supreme Court has made clear that a simple blanket rule mandating closure in all sex offense cases involving young victims violates the Constitution. *See Globe Newspaper, supra.*

■ Although the district court undoubtedly considered these factors in deciding to partially close the courtroom, the court failed to make findings on the record in support of its order as required by the Supreme Court. Appellant argues that this failure requires the reversal of his conviction. We disagree. Although we recognize that a defendant is not required to show prejudice to obtain relief for a violation of the right to a public trial, we do not think that the failure to make findings at the time of the partial closure in this case requires reversal. *Cf. Waller v. Georgia,* 467 U.S. at 50, 104 S.Ct. at 2217 ("[T]he remedy should be appropriate to the violation.")

Appellant contends that we must reverse his conviction under the reasoning of *Davis v. Reynolds,* 890 F.2d 1105 (10th Cir.1989). In *Davis,* a review of a petition for writ of habeas corpus, we found that a state trial court violated the defendant's Sixth Amendment right to a public trial when it failed to articulate specific, reviewable findings adequate to support the total closure of the courtroom during the complaining witness' testimony. We therefore ordered that the defendant either be given a new trial or released from custody. *Davis* differs from the instant case in two material respects, however. First, *Davis* dealt with a total closure of the courtroom, whereas the instant case clearly involves a partial closure. In *Davis* we pointed out that the closure order made no exceptions for members of the press or for relatives of the defendant. We noted that some courts, including the Tenth Circuit, have "developed a more lenient standard for closure orders which only partially exclude the public or are otherwise narrowly tailored to specific needs." *Davis,* 890 F.2d at 1109.

By the express terms of the district court's order in this case, the press was allowed to remain in the courtroom during the complainant's testimony, as were the defendant's relatives. Tr.Vol.II at 72. In these circumstances, where the closure order appears to be narrowly drawn, we do not think that the failure to make record findings in and of itself requires a new trial. The lack of findings prevents us from determining whether the defendant's right to a public trial was outweighed by the interest asserted by the government in protecting the complaining witness. But to grant appellant a new trial under these circumstances without making that determination would constitute a windfall and would not be in the public interest. *Cf. Waller v. Georgia, supra* (Failure to hold suppression hearing in public did not require granting the defendant a new trial). This is especially true in the instant case, where the defendant objected generally to the order of partial closure but did not object to the lack of findings by the district court.[1] The *Davis* case also differs significantly from this case in that *Davis* was before the court on habeas review. As such, we did not have the authority to remand the case to the trial court even had we believed that to be an appropriate remedy for the trial court's failure to make adequate findings.

In this instance the appropriate course is to remand the case to the district court with directions to supplement the record with the facts and reasoning upon which the partial closure of the courtroom was based. *Cf. Globe Newspaper,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (Stevens, J., dissenting) ("Normally, if the constitutional deficiency is the absence of findings to support a trial order, the Court would either remand for factfinding, or examine the record itself, before deciding whether the order measured up to constitutional standards.") and *Waller v. Georgia, supra* (Where the district court failed to hold a suppression hearing in public, a new trial was not required since it "presumably would be a windfall for the defendant and not in the public interest.") (citing *Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).[2] Remanding the case to the district court here will fully protect the defendant's rights. Insofar as the court failed to make adequate findings on the record, such a deficiency can be remedied by the district court upon remand. This procedure will provide us with a basis for determining whether the partial closure of the courtroom was justified under the circumstances. This court will retain jurisdiction of the case so that after the record is supplemented, we can determine whether the particular interests asserted to justify the partial closure were sufficient to overcome the presumption of openness that attaches to all criminal trials.

### III. Rule 412.

▮▮▮ Appellant's next argument is that the district court erred in excluding certain evidence under Fed.R.Evid. 412. Federal Rule of Evidence 412 provides in pertinent part:

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of an offense under chapter 109A of title 18, United States Code, evidence of a victim's past sexual

---

1. *Cf. Douglas v. Wainwright,* 714 F.2d 1532, 1546 (11th Cir.1983) (On review for petition for writ of habeas corpus, held that the partial closure of the trial during the complaining witness' testimony did not violate the defendant's Sixth Amendment right to a public trial and the defendant's failure to object to the lack of findings in support of the district court's closure order constituted a waiver), *vacated and remanded,* 468 U.S. 1212, 104 S.Ct. 3580, 82 L.Ed.2d 879 (1984) [remanded for further consideration in light of *Waller v. Georgia* ], *reaffirmed, Douglas v. Wainwright,* 739 F.2d 531 (11th Cir.1984),

*cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).

2. *See Goldberg,* 425 U.S. at 111, 96 S.Ct. at 1348: "[W]e do not think that this Court should vacate [petitioner's] conviction and order a new trial, since petitioner's rights can be fully protected by a remand to the trial court with direction to hold an inquiry consistent with this opinion. The District Court will supplement the record with findings and enter a new final judgment if the court concludes after the inquiry to reaffirm it denial of petitioner's motion."

behavior ... is ... not admissible [except in certain circumstances]....[3]

The defendant sought to introduce evidence at trial that a few weeks prior to the incident alleged in the indictment, the complainant's mother had found birth control pills in the complainant's purse. After finding the pills, the complainant's parents told her that they wanted her to see her boyfriend less frequently. The defendant apparently contends that this incident was probative of the complainant's motive for accompanying him and for engaging in sex with him. The district court allowed the defendant to bring out the fact that "a certain event" occurred that caused the complainant's parents to tell her to see her boyfriend less often. Applying Fed.R. Evid. 412, however, the court ruled that the fact that the parents had found birth control pills was inadmissible. Appellant contends that this was error because Rule 412 does not apply to this case. He argues that by its plain language, Rule 412 only applies to cases in which the defendant is accused of an offense under Chapter 109A of Title 18 of the United States Code. Chapter 109A criminalizes sexual offenses occurring within the special maritime or territorial jurisdiction of the United States. The defendant here was not and could not have been charged with such an offense. He was charged under 18 U.S.C. § 1201(a) with kidnapping for the purpose of sexually abusing the victim and extorting money from her.

We think that had Congress anticipated the circumstances of the present case it might have drafted Rule 412 differently.[4] Be that as it may, we recognize that we are not at liberty to rewrite an act passed by the legislature. Rule 412 applies in a case "in which a person is accused of an offense under chapter 109A of title 18." There is no question that in the present case the defendant was not accused of such an offense. Thus, by its terms, Rule 412 cannot apply. Nevertheless, even in the absence of Rule 412 a district court has the authority in a proper case to exclude evidence of past sexual behavior of a complaining witness. *See United States v. Kasto*, 584 F.2d 268, 272 (8th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979) (In a pre-Rule 412 rape case, the decision to exclude evidence of the complaining witness' sexual activity with other men and the fact that she wore an IUD was not an abuse of the judge's discretion under Rule 403). Rule 403 gives the district court discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice, confusion of the issues, or misleading the jury. The legislative history behind Rule 412 indicates that Congress was concerned about these types of issues when it enacted Rule 412. *See* 124 Cong.Rec. H11944 (Remarks

---

**3.** The exceptions listed in Rule 412 are not at issue in this case.

**4.** Rule 412 was enacted in 1978 and in its original form was entitled "Rape Cases; Relevance of Victim's Past Sexual Behavior." By its terms the rule applied "in a criminal case in which a person is accused of rape or of assault to commit rape." By adopting the rule, Congress intended to bring the Federal Rules of Evidence in line with those states that had adopted "rape shield" statutes limiting the admissibility of a rape victim's past sexual behavior. 124 Cong. Rec. H11944 (1978) (Remarks of Rep. Mann). Federal jurisdiction over the crime of rape was generally limited to the special territorial jurisdiction of the United States.

Congress subsequently repealed the federal statute dealing with rape and replaced it with Chapter 109A of title 18 (18 U.S.C. § 2241–45), which prohibits all forms of sexual abuse within the special territorial jurisdiction of the United States. Rule 412 was subsequently changed by

the Minor and Technical Criminal Law Amendments Act of 1988 so that the language of the rule conformed to those code sections asserting federal jurisdiction over crimes of sexual abuse. Thus, rule 412 was amended to apply to "a criminal case in which a person is accused of an offense under chapter 109A of title 18, United States Code...." There is no indication in the legislative history as to whether Congress considered the circumstances posed by the instant case—that sexual abuse, although not occurring within the special territorial jurisdiction of the U.S., might be an issue in a federal criminal case alleging kidnapping. Although by its terms rule 412 is limited to sexual abuse occurring within the special territorial jurisdiction of the United States, it would defy reason to argue that Congress intended evidence of a victim's past sexual behavior to be admitted if the sexual abuse occurred outside of the United States' special territorial jurisdiction.

of Rep. Mann) ("The bill before us [adopting Rule 412] fairly balances the interests involved—the rape victim's interest in protecting her private life from unwarranted public exposure; the defendant's interest in being able adequately to present a defense by offering relevant and probative evidence; and society's interest in a fair trial, one where unduly prejudicial evidence is not permitted to becloud the issues before the jury.") Thus, the exclusion of evidence of the complainant's past sexual behavior in this case would be proper under Rule 403 if the probative value of the evidence was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See United States v. One Feather*, 702 F.2d 736, 739 (8th Cir.1983) (Policy of Rule 412 taken into account by the district court in excluding evidence of past sexual behavior under Rule 403). Rule 403 requires that this determination be made initially by the trial court, however, with appellate review only for an abuse of discretion. In view of the fact that the district court made no specific findings as to whether the evidence in this case was substantially more prejudicial than probative, we find it appropriate under these circumstances to remand the matter so that the district judge can perform the Rule 403 balancing test and supplement the record with findings on the issues relevant thereto.

### IV. Sentencing.

█ Appellant maintains that he was erroneously sentenced as a career offender. The district court classified appellant as a career offender after finding that he had two predicate felonies under U.S.S.G. § 4B1.1. One of the predicate felonies cited by the district court was a prior state conviction for possession of a controlled substance. This prior conviction was for simple possession and did not contain an element of intent to manufacture, import, export, or distribute. The government now concedes that this prior offense should not have been counted because it did not meet the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2(2). Accordingly, we vacate the sentence imposed by the district court and remand for resentencing.

Appellant next contends that the district court erred in its application of U.S.S.G. § 2A4.1(b)(3), pertaining to the use of a dangerous weapon. He also contends that his Sixth Amendment right to the effective assistance of counsel at sentencing was violated. This latter contention comes about because the defendant informed the court at the sentencing hearing that he was dissatisfied with his attorney and wished to represent himself. The defendant maintains that the district court's inquiry as to whether this waiver was knowing and intelligent was inadequate. Inasmuch as the government has already confessed that the sentence imposed was in error and that the defendant must be resentenced, we do not address these alleged flaws in the sentencing determination. Upon remand, the district court should of course see that the defendant's right to the effective assistance of counsel at sentencing is protected.

### V. Conclusion.

The judgment of conviction is affirmed in part as set forth in this opinion. As to appellant's argument that the partial closure of the trial violated his constitutional rights, we remand this matter to the district court with directions to supplement the record with the findings upon which the partial closure of the trial was based. We also remand the case so that the district court may supplement the record with its determination of whether the probative value of evidence of the birth control pills was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. We retain jurisdiction over this appeal pending the supplementation of the record by the district court. The sentence imposed by the district court is vacated and the matter is remanded to the district court for resentencing.

AFFIRMED IN PART, SENTENCE VACATED, and REMANDED WITH INSTRUCTIONS.

SEYMOUR, Circuit Judge, concurring.

While I otherwise join the majority opinion, I write separately because I believe a remand for balancing under Rule 403 to determine the admissibility of the birth control pill evidence is unnecessary.

Defendant argues that the district court's application of Rule 412 to the evidence he wished to present was wrong as a matter of law because Rule 412 applies only to crimes listed under Chapter 109A of Title 18. Although I agree with the majority that Rule 412 on its face is not applicable to the crime for which defendant was charged, I believe its application under the circumstances of this case does not require a reversal.

Defendant sought to have the evidence of birth control pills admitted "for the purposes of: (a) impeachment; (b) motive and intent regarding consent." Rec., vol. IV, doc. 63, at 7. Before Rule 412 was enacted, courts often would allow evidence of a rape victim's past sexual behavior for these purposes under Rule 404(a)(2). Rule 404(a)(2) permits a defendant to use evidence of an alleged victim's "character traits" to prove that person acted in conformity with those traits during the events that led up to the crime charged. *See, e.g., United States v. Schatzle*, 901 F.2d 252, 256 (2nd Cir.1990); *see generally* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* § 404[06], at 404–48 (1990). The admissibility of character evidence is governed by the balancing test of Rule 403. *See Booth v. Maryland*, 482 U.S. 496, 507 n. 10, 107 S.Ct. 2529, 2535 n. 10, 96 L.Ed.2d 440 (1987).

Cognizant of the potential prejudicial dangers flowing from this type of evidence, courts balancing its probative value against its prejudicial effect prior to the enactment of Rule 404(a)(2) generally allowed the introduction of evidence regarding a victim's character traits only in cases where the defendant pled self-defense claiming that the victim was the aggressor. *See* 22 Wright & Graham, *Federal Practice and Procedure* § 5237, at 399 (1978); 2 Weinstein & Berger, *supra*, § 404[06] and cases cited therein. However, as Professor Wright points out, sexist attitudes by those same courts predisposed them to allow information concerning a sexual assault victim's past sexual behavior as evidence of her character. Evidence of this "character trait" was offered to prove consent to the crime alleged or an inclination to make false accusations of sexual assault. *See* 22 Wright & Graham, *supra*, § 5238, at 412–13; *see also Virgin Islands v. Jacobs*, 634 F.Supp. 933, 936 (D.V.I.1986) (describing past practice of courts with respect to evidence of rape victim's character).

The theory of relevance with respect to the issue of consent was stated this way by one court:

"This class of evidence is admissible for the purpose of tending to show the non-probability of resistance upon the part of the prosecutrix; for it is certainly more probable that a woman who has done these things voluntarily in the past would be much more likely to consent than one whose past reputation was without blemish, and whose personal conduct could not truthfully be assailed."

*People v. Johnson*, 106 Cal. 289, 39 P. 622, 623 (1895); *see Gish v. Wisner*, 288 F. 562, 563 (5th Cir.1923) ("the rule is established by the great weight of authority that the general reputation for chastity of the complaining witness, who claims to be the victim, is material as bearing upon the vital question of her consent or nonconsent"). With respect to credibility, Wigmore believed science had established that women who had engaged in consensual sexual relations prior to the sexual assault were more inclined to make false accusations of rape, and he advocated psychiatric examinations of all complainants in sex crimes cases. *See* 22 Wright & Graham, *supra*, § 5238, at 414. Unfortunately, the arguments made in the present case illustrate that these myths remain alive today.

Rule 412(a) codifies Congress' enlightened determination that evidence of a victim's past sexual behavior is irrelevant to the credibility of her testimony, and that her prior sexual activity with third parties has no bearing on the issue of whether she

consented to the sexual violence charged.[1] *See Jacobs,* 634 F.Supp. at 936–37; *United States v. Saunders,* 736 F.Supp. 698, 701 (W.D.Va.1990); 2 Weinstein & Berger, *supra,* § 412[01], at 412–12. By so concluding, Congress performed its own balancing test and adopted a per se rule that evidence of a victim's past sexual behavior with third parties is never more probative than prejudicial on the issue of consent. Rule 412 thus mandates the exclusion of evidence of such past sexual behavior and deprives the district court of its discretion to admit this type of evidence based upon its evaluation that the probative value exceeds the prejudicial effect. *Cf. United States v. Shaw,* 824 F.2d 601, 606–07 (8th Cir.1987) (In enacting Rule 412, Congress balanced competing interests previously left for consideration of trial judge under Rule 403), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988).

Nonetheless, the majority would remand the case and have the district court perform its own probative value/prejudicial effect evaluation and supplement the record with specific findings on the issues relevant to the determination of whether the evidence of the birth control pills was substantially more prejudicial than probative. While an articulation of competing considerations in Rule 403 determinations is helpful for purposes of appellate review, it has never been a mandatory component of the invocation of the rule. *See* S.A. Saltzburg & K.R. Redden, *Federal Rules of Evidence Manual* 141–42 (4th ed.1986). Often, the district court merely states that it concludes the evidence is substantially more prejudicial than probative, leaving us with no more than a recitation of the rule's language. *See, e.g., United States v. Mangiameli,* 668 F.2d 1172, 1176 (10th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). On review of such a case, we must make our own appraisal of the issues involved in determining whether the district court abused its discretion in making the ruling. Indeed, we have on occasion reviewed the record to make the determination on appeal that the probative value of the proffered evidence was substantially outweighed by its probative value even though the district court did not indicate its reliance on Rule 403. *See United States v. Biswell,* 700 F.2d 1310, 1319 (10th Cir.1983).

In the Rule 404(b) context, where we have specifically required the district court to articulate on the record the grounds upon which evidence is admitted or excluded, we have recognized circumstances where the lack of compliance does not warrant remand. If "the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling," we have affirmed the district court's Rule 404(b) ruling, holding that the failure to make specific findings was harmless error. *United States v. Orr,* 864 F.2d 1505, 1511 (10th Cir.1988) (quoting *United States v. Zabaneh,* 837 F.2d 1249, 1262 (5th Cir. 1988)); *see United States v. Williams,* 923 F.2d 1397, 1401 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991); *United States v. Doran,* 882 F.2d 1511, 1523–24 (10th Cir.1989); *United States v. Porter,* 881 F.2d 878, 885 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Manner,* 887 F.2d 317, 323 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *United States v. Acosta–Cazares,* 878 F.2d 945, 950–51 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989).

Here, defendant contends only that the exclusion of the evidence prevented him "from developing his theory as to the complainant's motive for consenting to his advances." Appellant's Brief at 37. Evidently this theory was that the complainant consented to defendant's advances as a means of retribution against her parents. Defendant was allowed to put on evidence that an "event" occurred that caused the complainant's parents to tell her to see her boyfriend less frequently. Testimony indi-

---

1. Evidence of a victim's prior sexual behavior with the accused is admissible on the issue of consent under certain circumstances. *See* Rule 412(b)(2)(B).

cated that her parents did this because they believed she and her boyfriend were becoming too serious. The complainant indicated that she saw less of her boyfriend after this "event," although she continued to see him. Thus, defendant was allowed to present the theory that the complainant agreed to accompany him and to have sex with him as retribution for her parent's interference in her relationship with her boyfriend. I fail to see what the birth control pills add to this theory—unless it is to suggest that because the complainant had been sexually active with someone else in the past, it was more likely that she consented to defendant's advances and less likely that she was overcome by force.[2] This is precisely the type of reasoning that Rule 412 was designed to dissuade.

Moreover, the policy reasons underlying Rule 412 apply fully in this case notwithstanding that defendant was charged with kidnapping. The indictment alleged that defendant kidnapped the complainant for the purposes of sexually abusing her. Whether defendant sexually abused the complainant was thus clearly put in issue by the charge against him. In a somewhat similar case, *State v. Redford*, 242 Kan. 658, 750 P.2d 1013, 1024 (1988), the defendant was charged with kidnapping, rape, and sodomy. He attempted to introduce evidence of the complainant's prior sexual behavior to show that she had not been kidnapped but had gone with him voluntarily. The Kansas Supreme Court rejected this argument, stating:

"It would be naive to pretend the jury would consider evidence of [the complainant's] prior sexual activities only for the purpose of determining if she had been kidnapped and not to determine if she had been raped and sodomized. The en-

actment of [the Kansas rape shield statute] was prompted in part by the realization that the admission of evidence of prior sexual activity destroys the victim's testimony. It would violate public policy to permit [the defendant] to present evidence of the victim's prior sexual activity merely because he was charged with other crimes in addition to rape and sodomy."

*Id.* In the instant case, the charge of kidnapping is inextricably intertwined with the allegations of sexual abuse. There is thus no reason why the policy considerations underlying Rule 412 would not apply in these circumstances.

Because it is readily apparent to me that Rule 412 constitutes a congressional mandate that evidence of a complainant's prior sexual behavior with third parties is more prejudicial than probative when offered to impeach her or to prove consent to sexual intercourse, I would hold that the district court properly excluded the evidence. Thus, I find it unnecessary to remand on this issue for a balancing under Rule 403. *Cf. Eichel v. New York Central R.R. Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (fact that admission of evidence would violate spirit of federal statute is reason for concluding that prejudice outweighed probative value).

**2.** Evidence of the birth control pills under these circumstances constitutes "evidence of the victim's past sexual behavior." Fed.R.Evid. 412. *See* Wright & Graham § 5384 at 545 ("'Sexual behavior' clearly encompasses any conduct involving or directly related to sexual intercourse or analogous acts, e.g., ... the use of contraceptives."). Clearly, the inference arising from the possession of the birth control pills was that the victim was sexually active. *Cf. United States v. Kasto*, 584 F.2d 268, 272 (8th Cir.1978) (Rule 403 balancing precluded defendant from intro-

ducing evidence that complainant was using IUD). It appears that most state courts addressing this issue have concluded that evidence of birth control constitutes evidence of sexual behavior. *See, e.g., Thomas v. State*, 301 Md. 294, 483 A.2d 6 (1984), *cert. denied Thomas v. Maryland*, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *Commonwealth v. Chretien*, 383 Mass. 123, 417 N.E.2d 1203 (1981); *North Carolina v. Galloway*, 304 N.C. 485, 284 S.E.2d 509 (1981).