**UNITED STATES of America, Appellee,**

v.

**James Fremont FARMER, Sr., Appellant.**

No. 93–2652.

United States Court of Appeals, Eighth Circuit.

Submitted May 24, 1994.

Decided Aug. 12, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 21, 1994.

Lee C. "Kit" McCahren, Pierre, SD, for appellant.

David L. Zuercher, Asst. U.S. Atty., Pierre, SD, for appellee.

Before McMILLIAN, MAGILL and BEAM, Circuit Judges.

BEAM, Circuit Judge.

James Fremont Farmer, Sr., appeals his conviction and 180–month sentence for assault with a dangerous weapon, aggravated sexual abuse and kidnapping in violation of 18 U.S.C. §§ 113(c), 1153, 2241(a) and 1201. He primarily challenges the district court's [1] partial closure of the jury trial during a portion of the victim's testimony. We affirm.

## I. BACKGROUND

According to the evidence at trial, the seventeen-year-old victim had been drinking at various parties all night long and she could remember very little about the evening in question. Sheila Good Shield, a twenty-six-year-old woman who was at the last party, intervened when the victim was being "pushed around" by persons at the gathering and helped the victim walk to town.

Good Shield testified that Farmer pulled up in his car and asked if she needed help in taking the victim home. Good Shield and the victim entered the car. When Farmer did not go straight to the victim's home, Good Shield became frightened and exited the car, leaving the victim with Farmer.

After Good Shield's testimony at the trial, Farmer tendered a plea of guilty, stating that he had been too drunk to remember the incident and after viewing evidentiary reports and hearing Good Shield he had become convinced that he must have committed the crimes. But, because Farmer claimed that he could not remember committing the crimes, the court went forward with the trial and had the victim testify.

The victim proceeded to tell about her recollection of the assault and her conversations with Farmer. When court recessed for the day, the victim had not completed her testimony. The court asked Farmer to consider his tendered plea overnight, gave an instruction to spectators in the courtroom to avoid any discussion of the case with members of the jury and adjourned court.

The next day Farmer advised the court that he would like to have the victim finish her testimony. Because she did not arrive in a timely fashion, another witness was called. When the victim arrived, the following exchange took place:

MR. SCHIEFFER: Your Honor, the United States would move at this time that during the testimony of the victim that the courtroom be cleared except for her immediate family and the treating psychologist.

THE COURT: Okay. The defendant may be heard on the motion.

MR. McCAHREN: We object to that, Your Honor. There is no authority for that. This Court can't order that. And it would violate the defendant's right to a fair trial and confrontation clause to the United States Constitution.

THE COURT: Okay. The objection—the motion will be granted. And all spectators other than the members of [the victim's] family will be excused from the courtroom during the balance of her testimony.

MR. McCAHREN: Your Honor, I'm going to further my objection to that. You're allowing the most critical witness's support group to remain in here and you're ordering the defendant's family to exit. And I

---

1. The Honorable John B. Jones, Chief United States District Judge for the District of South Dakota.

don't know what authority the government has for that motion, what authority the Court has to grant that motion other than just the Court's inherent powers from the bench.

THE COURT: The motion has been granted. The Marshall will go ahead and ask persons other than the category—other than the category that I allowed to remain to please depart from the courtroom.

MR. McCAHREN: As long as my record is clear, I don't have any problem.

THE COURT: Very well.

Trial Transcript, Vol. II at 183–84.

The jury was then brought in and the victim completed her testimony. Farmer moved for acquittal, the court denied the motion and the jury found Farmer guilty on all three counts.

## II. DISCUSSION

### A. Partial Closure

■ A public trial, protected by the Sixth Amendment rights of the accused and the implicit First Amendment rights of the press and public, allows the public to see for itself that the accused is dealt with fairly and not unjustly condemned and ensures that judges, prosecutors and witnesses carry out their respective duties with a keen sense of the importance of their functions. *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2nd Cir.1992) (citing *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984)). In *Waller*, the Supreme Court reaffirmed that a party seeking to close a hearing "must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. at 2216.

In *Woods*, the trial court ordered all members of the defendant's family from the courtroom after the prosecutor informed the judge that a witness was terrified of retaliation from the defendant's family. 977 F.2d at 75. The Second Circuit joined the Ninth, Tenth, and Eleventh Circuits in concluding that "when a trial judge orders a partial, as opposed to a total, closure of a court proceeding at the request of one party, a 'substantial reason' rather than *Waller's* 'overriding interest' will justify the closure," because a partial closure does not "implicate the same secrecy and fairness concerns that a total closure does." *Id.* at 76 (*see* cases cited therein). Noting that the trial judge had asked the witness whether it was true she was reluctant to testify because she feared for her safety and that the judge had an in-chambers conference with the attorneys, the court concluded the record was sufficient to support the partial, temporary closure of the trial. *Id.* at 77–78.

Similarly, in *United States v. Galloway*, the Tenth Circuit acknowledged that a "partial closure need only be supported by a 'substantial' interest, rather than a 'compelling' one." 937 F.2d 542, 546 (10th Cir.1991). The court nonetheless held that the trial court must make sufficient findings to allow the reviewing court to determine whether the partial closure was proper. *Id.* The court determined that the appropriate factors to weigh include the age of an alleged victim, the nature of an alleged offense and the potential for harm to the victim. *Id.* Noting that the trial court had failed to make such findings on the record, the court declined to reverse the defendant's conviction, but instead remanded the case for further findings. *Id.* at 546–47.

■ Here, however, we see no need for a remand even though the district court made no explicit findings. In this circuit, specific findings by the district court are not necessary if we can glean sufficient support for a partial temporary closure from the record. *See United States v. Lucas*, 932 F.2d 1210, 1216–17 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991). In *Lucas*, we noted that our review of the issue of right to a public trial is for abuse of discretion. *Id.* at 1217. Although *Lucas* dealt with a screen that shielded the witness from spectators, Farmer presents the same legal issue. In *Lucas*, we said, "[c]onsidering the record before the District Court, we find no abuse of discretion

in [the] conclusion that a screen should be used...." *Id.* at 1217.

■ We have reviewed the record in this case and, likewise, find no abuse of discretion by the district court. There is evidence in the record showing that Farmer had threatened the victim and that she feared retaliation by Farmer and his family. Trial Transcript, Vol. I at 59–60, 119, 147. Indeed, evidence of the victim's age, the brutal nature of the offense and the victim's well-reasoned fear of Farmer and his family was more than enough to justify the decision.

## B. Acceptance of Responsibility

■ The other issue raised by Farmer involves a requested reduction in sentence for acceptance of responsibility under USSG § 3E1.1. We review the district court's determination to deny such reduction under a clearly erroneous standard. The burden of proof on the issue of acceptance of responsibility was upon Farmer. *United States v. Lublin,* 981 F.2d 367, 370 (8th Cir.1992). Given the fact that Farmer admitted, for sentencing purposes, a physical assault on the victim but steadfastly denied the sexual attack, we see no clear error. *See United States v. McQuay,* 7 F.3d 800, 801 (8th Cir. 1993) (court gives great deference to district court's refusal to grant reduction).

## III. CONCLUSION

The district court did not abuse its discretion in the partial, temporary closure of the public trial and did not clearly err in denying a reduction in sentence under USSG § 3E1.1. Accordingly, we affirm.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. The majority opinion ignores the legal principles that have developed to ensure that a defendant enjoys his or her Sixth Amendment right to a public trial. The Supreme Court has emphasized the need for specific findings to help determine whether or not a closure order is justified:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 2214, 81 L.Ed.2d 31 (1984) (*Waller*). *See also Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (trial judge closed voir dire for a rape case, intending to protect privacy interests of jurors who might have highly personal answers; Supreme Court indicated that such privacy interests might be sufficient to warrant closure of voir dire, but found that the judge had not made any specific findings to show that those interests would in fact be threatened by an open hearing).

Although *Waller* involved the total closure of a trial, the requirement that the trial court make sufficient findings to allow the reviewing court to determine whether or not a closure was justified is equally applicable in the case of a partial closure. *See United States v. Galloway,* 937 F.2d 542, 546 (10th Cir.1991) (*Galloway*) (district court must articulate specific findings to support its decision to partially close a trial during testimony).

The majority opinion in the present case upholds the partial closure order based on the victim's fear of the defendant and his family, the victim's young age, and the brutal nature of the alleged offense. *See* Op. at 371. "Although the district court undoubtedly considered these factors in deciding to partially close the courtroom, the court failed to make findings on the record in support of its order as required by the Supreme Court." *Galloway,* 937 F.2d at 546. We cannot determine from this record why the district court decided to partially close this trial. The motion for partial closure did not specify any reasons for partial closure. In the absence of specific findings, the majority opinion in the present case upholds the district court's closure order based only upon a theoretical and abstract potential for harm to the victim.

In upholding the district court's partial closure order in the absence of any factual findings, the majority opinion cites to *United States v. Lucas*, which involved the protection of an undercover officer's identity by allowing her to testify behind a screen such that the judge, parties, and jury could see her, but she could not be seen by spectators. Our treatment of the district court's order in *Lucas* in no way explains why, in the present case, the majority opinion requires no specific findings to justify the ousting of defendant's family and friends, the press, and public spectators, from an otherwise public trial. Contrary to the majority opinion's intimation that the district court in *Lucas* made no findings regarding the need to utilize a screen, the district court, after hearing testimony and extensive argument by counsel on the matter, specifically found:

> that [the undercover officer] was, at the time of trial, involved in unrelated narcotics investigations and that if her identity was revealed her life would be in danger. It also found that people "engaged in unlawful activity in the Kansas City area" might attempt to use the trial to identify [the undercover officer] (citations to transcript omitted), who was one of a very small number of [such] undercover officers in the Kansas City Police force. Consequently, it concluded that the government had established two "overriding interest[s]" likely to be prejudiced if [the undercover officer's] identity was not concealed: the ability of the police to conduct effectively law enforcement operations, and the physical welfare of the officers involved. It then considered the use of a disguise, the use of a screen and full closure of the courtroom as means of concealing her identity. It concluded that, in order most effectively to protect [the undercover officer] as well as the right to a public trial and the right to confrontation, a screen should be used during her testimony in such a way as to permit spectators to hear but not see her, while not interfering with the ability of the defendants, the court, or the jury to see her when she testified.

*Lucas*, 932 F.2d at 1217.

The district court in *Lucas* heard testimony and arguments by counsel, made specific findings, and then balanced the rights of the defendant to a public trial against the protection of the identity of the witness in order to determine whether a partial closure of the courtroom was constitutionally justified. In compliance with *Waller*, the district court in *Lucas* made specific findings, identified the interests of the party seeking closure, and considered lesser alternatives. I fail to see how the majority opinion can analogize *Lucas* to justify the result it reaches in the present case.[1]

Accordingly, I would remand the case to the district court with directions to supplement the record with the facts and reasoning upon which the partial closure of the courtroom during the victim's testimony was based.

**1.** By contrast to *Lucas*, the partial closure in the present case is particularly odd given that the victim's identity had already been disclosed, and the victim had already testified in part in open court, before the defendant's family and friends. Furthermore, the majority opinion presents a chimerical analogy: "[a]lthough *Lucas* dealt with a screen that shielded the witness from specta-

tors, *Farmer* presents the same legal issue." Op. at 371. The use of a screen to protect a witness' identity does not involve the same secretiveness and censorship concerns and fairness interests as the outright removal of all spectators from a courtroom. In *Lucas*, the trial court allowed spectators "to hear but not see" the witness. *Lucas*, 932 F.2d at 1217.